IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BYRA MARBLE, RICHARD LANGHART AND KAREN LANGHART, individually and as successors-in-interest on behalf of the Estate of ERIKA LANGHART; MICHELLE ROWE, DANIEL ROWE, TONYA STRANGE, DEMITRESS THOMPSON-MCCAULEY, JEROME MCCAULEY, CRYSTAL O'BRISKIE.<br><br>Plaintiffs,<br><br>v.<br><br>ORGANON USA, INC.; ORGANON PHARMACEUTICAL USA, INC.; ORGANON INTERNATIONAL, INC.; ORGANON BIOSCIENCES NV, AKZO NOBEL NV, SCHERING-PLOUGH CORPORATION, MERCK & COMPANY, INC.; MCKESSON CORPORATION and DOES 1–100.<br><br>Defendants. | No. C 12-02213 WHA<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND AND DENYING DEFENDANTS' MOTION TO STAY PROCEEDINGS** |

**INTRODUCTION**

In this pharmaceutical products-liability case, defendants Organon USA, Inc., Organon Pharmaceutical USA, Inc., Organon International, Inc., and Merck & Company, Inc. ("Merck defendants") move to stay this action pending a potential transfer to a multidistrict litigation proceeding. Plaintiffs move to remand this action to state court for lack of subject-matter jurisdiction due to the absence of complete diversity. Defendants' motion to stay pending transfer to MDL is **DENIED.** Plaintiffs' motion to remand is **GRANTED.**

**STATEMENT**

Merck defendants are pharmaceutical companies that manufacture the prescription hormonal contraceptive device commonly known as NuvaRing®. This products-liability case is one of a large number of actions filed against defendants for the alleged personal injury caused by NuvaRing®. On August 22, 2008, an MDL panel transferred eleven actions pending at the time to MDL No. 1964 in United States District Court for the Eastern District of Missouri for coordinated consolidated pretrial proceedings before the Honorable Rodney Sippel. *In re NuvaRing® Products Liability Litigation*, 572 F. Supp. 2d 1382 (J.P.M.L. 2008). As of April 30, 2012, nine hundred additional actions have been transferred to MDL No. 1964 (Remand Opp. Br. 4). Plaintiffs filed a state court action for personal injury allegedly caused by NuvaRing® on April 30, 2012, in the Superior Court of California for the City and County of San Francisco. In the complaint, plaintiffs allege claims of: (1) strict products liability; (2) strict liability for manufacturing defect; (3) negligence; (4) breach of implied warranty; (5) breach of express warranty; (6) violation of California Civil Code Sections 1709 and 1710; (7) negligent misrepresentation; (8) fraud by concealment; (9) violation of California Business and Professions Code Section 17200; (10) violation of California Business and Professions Code Section 17500; (11) violation of California Civil Code Section 1750; (12) wrongful death; and (13) loss of consortium.

On May 2, 2012, Merck defendants removed this action to federal court, alleging that defendant McKesson, a citizen of California, was fraudulently joined in an effort to avoid federal jurisdiction. On May 4, 2012, Merck defendants filed a letter with the JPML identifying this case as a tag-along action to MDL No. 1964 (Boranian Decl. ¶ 7). On May 8, 2012, a conditional transfer order was issued for the instant action (*id*. ¶ 8). Merck defendants now move for a stay of this action, pending a transfer to MDL No. 1964.

On May 10, 2012, plaintiffs filed a motion to remand this action to state court, claiming lack of complete diversity. Plaintiffs contend that under 28 U.S.C. 1332, this Court lacks subject-matter jurisdiction because both defendant McKesson and plaintiff Marble are citizens

2

of California (Remand Mot. 1). Merck defendants argue that McKesson was fraudulently joined and should be ignored for purposes of determining diversity jurisdiction (Remand Opp. Br. 3–4).

## ANALYSIS

### 1. THE MOTION TO STAY REQUIRES CASE-SPECIFIC ANALYSIS.

The power to grant a temporary stay "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Whether a motion to remand or a motion to stay should be decided first, however, is "extremely sensitive to the facts of the case." *Burse v. Purdue Pharma Co.*, 2004 WL 1125055 at *1 (N.D. Cal. 2004) (Conti, J.). In prior pharmaceutical products-liability actions involving similar facts, the undersigned judge has deferred ruling on the plaintiffs' motions to remand and has granted the defendants' motions to stay pending the decisions of MDL panels to transfer those actions to designated MDL courts. *See Johnson v. Merck & Co., Inc.*, 2007 WL 754882 (N.D. Cal. 2007); *Nielsen v. Merck & Co., Inc.*, 2007 WL 755298 (N.D. Cal. 2007); *Camara v. Bayer Corp.*, 2010 WL 902780 (N.D. Cal. 2010). However, the rationale underlying those decisions revolved around considerations of judicial economy and preventing inconsistency; concerns that are not present in the instant case.

*Johnson* and *Nielsen* were both pharmaceutical products-liability actions in which the plaintiffs sued Merck in California state court for alleged harms arising out of the use of the anti-inflammatory drug VIOXX®. In those actions, the plaintiffs joined McKesson as a defendant based on its potential liability as a VIOXX® distributor. This Court granted the defendants' motions to stay pending the potential transfer of those actions to an MDL proceeding because several other federal courts had stayed VIOXX®-related actions from California that faced the same issue: whether the distributor defendants were fraudulently joined to defeat diversity. *See Johnson,* 2007 WL 754882 at *2; *Nielsen,* 2007 WL 755298 at *2. Because the transferee judge would "undoubtedly face most (if not all) of the same issues in dealing with the other pending remand motions," staying the proceedings "best serve[d] the interests of judicial

1  economy" and avoided "the possibility of inconsistent rulings." *Johnson,* 2007 WL 754882
2  at *2; *Nielsen,* 2007 WL 755298 at *2.

3    Likewise, in *Camara*, this Court deferred ruling on the plaintiffs' motion to remand
4  and granted the defendants' motion to stay pending the potential transfer of that action to an
5  MDL proceeding. The *Camara* plaintiffs also sued the defendants in California state court by
6  joining McKesson as a defendant based on its potential liability as a distributor of prescription
7  contraceptives. *Camara,* 2010 WL 902780 at *1. This Court granted the defendants' motion
8  to stay because eight motions to stay pending transfer to MDL had already been granted for
9  Yasmin® and YAZ®-related actions in the Northern and Central Districts of California despite
10 pending motions to remand (*id*. at *2). Because the transferee court was already deciding eight
11 similar motions to remand, addressing the motion to remand in this Court would "unnecessarily
12 duplicate work and could lead to inconsistent results" with the transferee judge, who was already
13 "well-equipped to make an informed an uniform decision" (*ibid*.).

14   The same reasoning governed Judge Martin Jenkins' order to stay proceedings in
15 *Nielsen v. Merck*, as well as Judge Sandra Armstrong's order to stay proceedings in *Blalock v.*
16 *Depuy Orthopaedics, Inc. See* 2007 WL 806510 at *2 (N.D. Cal. 2007); 2011 WL 6217540 at
17 *2 (N.D. Cal. 2011). In both of those cases, the respective MDL courts were already deciding
18 several of the exact same state law and fraudulent joinder claims from related actions. With one
19 possible exception, neither plaintiffs nor Merck defendants have cited to any case decided in
20 this district where a defendant's motion to stay has been granted absent the fact that an MDL
21 court was already deciding remand motions based on the exact same issues in related actions.
22 In *Freitas v. McKesson*, Judge James Ware denied the plaintiffs' motion to remand and granted
23 the defendants' motion to stay pending that action's potential transfer to MDL because the MDL
24 court was already presiding "over 100 cases involving allegations of harm resulting from the
25 ingestion of medications containing propoxyphene." 2012 WL 161211 at *2 (N.D. Cal. 2012).
26 However, Judge Ware's order did not clarify whether the MDL was already addressing other
27 motions to remand based on the same issues (*ibid*.). In contrast, Judge Armstrong denied a
28 motion to stay and granted a motion to remand in *Moorhouse v. Bayer*, even though four other

4

cases pending before MDL also involved remand issues. *See* 2008 WL 2477389 at *4 (N.D. Cal. 2008). Because the defendants neither "specif[ied] the nature of the remand issues nor whether the cases involve[d] California distributors," Judge Armstrong decided that it was not appropriate to defer to the MDL court on the plaintiffs' motion to remand (*ibid.*).

Whereas *Johnson*, *Camara* and both *Nielsen* cases all involved situations where the MDL judge was already deciding numerous motions to remand to California state court based on McKesson's potential liability as a distributor of VIOXX®, Yasmin® or YAZ®, "no other plaintiff has ever named McKesson Corporation or any other distributor in a NuvaRing® lawsuit anywhere in the country" (Remand Opp. Br. 1). Therefore, deciding on plaintiffs' motion to remand would not unnecessarily duplicate the work of Judge Sippel or lead to results inconsistent with the MDL as Judge Sippel has not considered the liability of NuvaRing® distributors or the validity of their joinder as defendants. Because no other case in the MDL thus far has presented the McKesson issue, there is no economy in sending this action to MDL for resolution.

"A district judge should not automatically stay discovery, postpone rulings on pending motions, or generally suspend further rulings upon a parties' motion to the MDL Panel for transfer and consolidation." *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997). "When considering a motion to stay, the district court should consider three factors: (1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated" (*ibid.*). As previously discussed, denying Merck defendants' motion to stay would not lead to duplicative litigation. Nor would it unfairly prejudice Merck defendants. Merck defendants argue that if individual federal district courts allowed cases to proceed during the period between their removal and their "inevitable" transfer to MDL No. 1964, they would face "death by a thousand cuts" as "plaintiffs would be free to pursue a strategy of aggressively litigating, and getting discovery in, hundreds of individual cases for the period of weeks that it takes for cases that inarguably meet the § 1407 transfer standard to be transferred" by the MDL panel (Stay Mot. 4–5). However, the reason

this Court is denying Merck defendants' motion to stay is because it is granting plaintiffs' motion to remand this action to California state court where it belongs. Therefore, plaintiffs will not be able to pursue a strategy of "aggressively litigating" and "getting discovery" in federal court before an "inevitable" transfer to MDL No. 1964 as all litigation pursuant to this action will occur in state court. Moreover, as Merck defendants highlight in their briefs, this is the first time in nearly one thousand actions that any NuvaRing® plaintiffs have joined McKesson or any other distributor as a defendant in NuvaRing® litigation. Why Merck defendants assume that they will face "death by a thousand cuts" in various federal district courts is puzzling, as the considerations underlying this Court's decision to deny defendants' motion to stay are specific and unique to this action. For the forgoing reasons, Merck defendants' motion to stay is **DENIED**.

## 2. MOTION TO REMAND.

This Court may remand a case to state court for lack of subject-matter jurisdiction. 28 U.S.C. 1447(c). Diversity jurisdiction pursuant to 28 U.S.C. 1332 requires complete diversity of citizenship. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Citizenship of fraudulently joined parties must be ignored in analyzing diversity (*ibid.*). [I]f plaintiff fails to state a claim against resident defendant, and the failure is obvious according to the settled rules of the state," then joinder of the resident defendant is fraudulent (*ibid.*). Here, Merck defendants argue that plaintiffs have fraudulently joined McKesson in order to defeat diversity jurisdiction. Merck defendants justify removing this action to federal court because discounting McKesson, there would be complete diversity and this Court would have subject matter jurisdiction. However, "[t]he 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted). Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance (*ibid.*).

Merck defendants claim that McKesson "cannot be liable to plaintiff on any theory alleged in the complaint" (Remand Opp. Br. 8). However, an examination of the complaint suggests the opposite is true, and Merck defendants have failed to meet their heavy burden of

establishing that removal was proper in this action. While Merck defendants argue that plaintiffs have failed to allege any viable claims against McKesson, plaintiffs have actually stated multiple viable claims against McKesson, including strict liability for failure to warn and negligence. Merck defendants argue that plaintiffs' claims are inadequate for three reasons: (1) plaintiffs have failed to establish a sufficient factual connection between McKesson and plaintiffs' alleged injuries; (2) plaintiffs' claims against McKesson are "irreconcilable with the "gravamen" of their complaint; and (3) plaintiffs' claims against McKesson are deficient because "under California law, drug distributors have no duty to warn" (Remand Opp. Br. 9–15). Each of these arguments will be addressed separately below.

### A. Factual Nexus Between McKesson and Plaintiffs' Injuries.

Under California law, a complaint must contain a "statement of facts constituting the cause of action, in ordinary and concise language." CAL. CODE CIV. PROC. § 425.10(a)(1). "In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." CAL. CODE CIV. PROC. § 452. In order to prevail on a strict liability cause of action in California, a plaintiff must establish that a defendant's "failure to warn was a legal cause of the injury." *Torres v. Xomox,* 49 Cal. App. 4th 1, 15 (Ct. App. 1996).

In their complaint, plaintiffs lay out allegations that state a sufficient cause of action against McKesson for failure to warn. *First*, plaintiffs allege that McKesson distributed NuvaRing® to the consuming public, including NuvaRing® plaintiffs (Compl. ¶ 41). Next, plaintiffs allege that NuvaRing® "was defective and unsafe for its intended purpose in that implantation of NuvaRing® causes serious injuries and/or death" (Compl. ¶ 70). Plaintiffs further allege that defendants, including McKesson, "knew or should have known that the product created a serious risk of harm to consumers" (Compl. ¶ 73). Finally, plaintiffs allege that defendants failed to warn consumers, including NuvaRing® plaintiffs, of these risks, and that due to "the lack of adequate use instructions and warnings, said Plaintiffs were caused to suffer the herein described injuries and damages" (Compl. ¶¶ 79–84). Merck defendants characterize plaintiffs' complaint as "cursory, non-specific" and "devoid of any facts concerning

1 any plaintiff" because plaintiffs have not alleged "when or where, or to whom, McKesson allegedly distributed products" or that "McKesson distributed NuvaRing® products that Plaintiffs actually used" (Remand Opp. Br. 11). However, Merck defendants' claim that plaintiffs have failed to allege that McKesson distributed NuvaRing® products to them is inconsistent with paragraph 41 of the complaint.

Moreover, Merck defendants fail to cite any binding authority to support their claim that plaintiffs must allege "when or where" McKesson distributed their products to plaintiffs in order for plaintiffs to state a viable claim against McKesson. In order to state a viable claim for strict liability for failure to warn in California, all a plaintiff must establish is that a defendant's "failure to warn was a legal cause of the injury." *See Torres,* 49 Cal. App. 4th at 15. Here, plaintiffs have provided enough detail in their complaint to meet this burden. The pleading standards set forth in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal* do not apply in state court. *See* 550 U.S. 544 (2007); 556 U.S. 662 (2009). In light of California's requirement that pleadings be construed liberally, this Court is not inclined to adopt Merck defendants' position and demand more detail from plaintiffs than is actually required for them to state a claim against McKesson. *See* CAL. CODE CIV. PROC. § 452.

### B. Consistency of Plaintiffs' Claims.

Merck defendants also argue that plaintiffs have failed to state a claim against McKesson because their "purported allegations against McKesson cannot be reconciled with their core product liability, failure-to-warn allegations against the Merck defendants" (Remand Opp. Br. 13). Merck defendants argue that the only safety and warning information McKesson possessed about NuvaRing® came from Merck defendants "in the form of FDA-approved packaging and labeling" (*ibid.*). According to Merck defendants, "under [p]laintiff's theory of their case as they have framed it in their own complaint, McKesson knew only as much as the [p]laintiffs themselves knew," and "[t]his inconsistency is reason enough to find McKesson fraudulently joined" (*id.* at 14). However, Merck defendants have misstated the way that plaintiffs have framed their case. Merck defendants do not cite to any part of the complaint that implies McKesson relied on "FDA approved packaging and labeling" as its only source of

8

information about NuvaRing® or "knew only as much as the plaintiffs themselves knew" about the contraceptive (*ibid.*). Plaintiffs actually assert the opposite in their complaint, claiming that "[d]efendants, *and each of them*, from the time that the NuvaRing® was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and <u>distributed</u>" were "in a unique position of knowledge, which was not possessed by NuvaRing® [p]laintiffs or their physicians, concerning the safety and effectiveness of the drug" (Compl. ¶¶ 111–113). Plaintiffs claim that both McKesson and Merck defendants had knowledge of risks of NuvaRing® beyond those listed on the FDA-approved label, and Merck defendants fail to show how it would be inconsistent or impossible for both themselves and McKesson to be aware of this information.

### C. Legal Sufficiency of Plaintiffs' Claims.

Finally, Merck defendants argue that McKesson is fraudulently joined because "under California law distributors of prescription drug products have no duty to warn" (Remand Opp. Br. 15). However, Merck defendants overstate their case. No California law exempts distributors of prescription drugs from California's general rule that holds distributors strictly liable for failure to warn in defective products cases. *See Bostick v. Flex Equip. Co., Inc.*, 147 Cal. App. 4th 80, 88 (Ct. App. 2007). Merck defendants cite to the California Supreme Court's decision in *Brown v. Superior Court* to argue that as a distributor, McKesson cannot be held strictly liable under California law for failure to warn (Remand Opp. Br. 15). However, *Brown* only reaches the issue of strict liability for prescription drug *manufacturers* for failure to warn, and it holds manufacturers strictly liable as long as they had "actual or constructive knowledge of the risk . . as of the time the product was sold or distributed." *Brown v. Superior Court*, 44 Cal. 3d 1049, 1066 (1988). "[T]he lack of any authority exempting distributors from liability for failure to warn in the prescription drug context inclines this Court against a finding of frivolity." *Moorhouse,* 2008 WL 2477389 at *5.

Merck defendants also argue that because federal law prohibits drug distributors from altering any part of a drug's FDA-approved label, McKesson cannot be held strictly liable for failing to warn NuvaRing® plaintiffs about any risks of NuvaRing® not contained on its FDA-approved label (Remand Opp. Br. 16). While Merck defendants characterize this argument

9

as an "inescapable conclusion," it is merely a policy argument and is not grounded in either California or federal law. The federal statute prohibiting drug manufacturers and distributors from altering FDA-approved labels does not exempt manufacturers and distributors from strict liability under state law for failure to warn consumers about a drug's defects. *See* 21 U.S.C. 331(k). In *Wyeth v. Levine*, the Supreme Court held that state law failure-to-warn claims against an antihistamine manufacturer were not preempted by federal law. 555 U.S. 555, 581 (2009). In its holding, the Court explicitly rejected the same arguments that Merck defendants advance in their briefs. Specifically, the Court concluded that it is "not impossible" for a drug manufacturer to comply with both its state law duty-to-warn obligations and its federal labeling duties, and that state law failure-to-warn claims "do not stand as an obstacle to the accomplishment of Congress' purposes" in imposing federal drug labeling regulations through the FDA (*ibid.*).

In order to meet the heavy burden required to justify removal based on fraudulent joinder, Merck defendants must establish that "there is no possibility of recovery against a resident defendant according to the settled rules of the state." *Morris*, 236 F.3d at 1067. Merck defendants have failed to establish that there is no possibility a California court will hold distributors liable for failure to warn consumers of the risks of a prescription drug. Merck defendants cannot rely on a policy argument rejected by the Supreme Court as a substitute for the "settled rule" they must cite to show McKesson was fraudulently joined. Because Merck defendants have not met their burden, this Court cannot retain jurisdiction over this action and must remand it to state court.

**CONCLUSION**

For the foregoing reasons, defendants' motion to stay pending the potential transfer of this action is **DENIED**, and this action will be remanded to the Superior Court of the State of

California for the City and County of San Francisco without prejudice. Defendants may seek to dismiss McKesson in Superior Court and remove this action again if successful.

**IT IS SO ORDERED.**

Dated: June 15, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE